UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| DESIREE OLKER, | ) |
|     Plaintiff, | ) ) ) |
| vs. | )   Case No.: 6:20-cv-00355-CEM-DCI ) |
| EDWARD ZENGEL & SON EXPRESS, INC. | ) ) ) |
|     Defendant. | ) ) |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

The parties, by counsel, jointly move for the Court's review and approval of their written Settlement Agreement and Release (attached hereto as Exhibit A). The Complaint in this matter contains a single claim arising under the Fair Labor Standards Act ("FLSA"), and the settlement represents a compromise of Plaintiff's alleged damages. Thus, the Settlement Agreement requires Court approval to be effective. The parties jointly request that the Court approve their Settlement Agreement and Release because:

    1.    This action arises under the FLSA. In *Lynn's Foods Stores, Inc. v. U.S. Department of Labor*, the Court held, "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." 679 F.2d 1352 (11th Cir. 1982). "First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them." *Id.*, at 1353. Alternatively, under section 216(b), when an employee brings "a private action for back wages . . . and present[s] to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* Under this

authority, before approving an FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1355. If the settlement reflects "a reasonable compromise over issues ... that are actually in dispute," the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

2. The Plaintiff Desiree Olker ("Plaintiff") responded to the Court's Interrogatories, and Defendant, Edward Zengel & Son Express, Inc. ("Defendant") provided Plaintiff's time and pay records to the Plaintiff's counsel. Additionally, the Defendant responded to Plaintiff's Requests for Admission, Interrogatories and Requests for Production of Documents, and produced more than 100 additional documents pertaining to Plaintiff's employment and her work for the Company. The facts in this matter were thoroughly investigated by both parties.

3. There is a *bona fide* dispute in this matter. The Defendant is a private motor carrier, providing transportation of regular mail, express mail and packages for the United States Postal Service ("USPS"). For that reason, the drivers for Defendant are generally subject to the requirements of the Service Contract Act ("SCA"). The SCA does not require the payment of overtime wages for hours worked in excess of forty (40) in any single work week.

4. Plaintiff was, at all times relevant to her Complaint, employed as a non-exempt hourly driver. In that capacity, Plaintiff did haul mail and packages for the USPS. At times, however, Plaintiff drove a vehicle weighing less than 10,000 pounds, which could call into question the applicability of the SCA to her employment during those times, and therefore Plaintiff's exemption from overtime pay during these times.

5. Furthermore, during a certain period of time during her employment, Plaintiff worked a varying schedule, driving the route between Orlando and Palm Bay City. Plaintiff would drive from Orlando to Palm Bay City at the pre-set times required by the USPS, wait to pick up the mail, then return to Orlando. As the USPS sets the schedule for the mail routes, when Plaintiff was driving this route, she was only required to work between twenty-five (25) to thirty (30) hours per week. For that reason, Plaintiff would have to work an additional ten (10) to fifteen (15) hours per week before any overtime liability would arise, even if the SCA was not applicable to her employment.

6. Plaintiff was required to turn in a time sheet stating the times that she worked, and she was paid for all of the hours that she recorded on her time sheets. A dispute, however, arose over whether Plaintiff was entitled to be paid during her wait or layover time in Palm Bay City pursuant to 29 C.F.R. §785.16. The Defendant responded to Plaintiff's allegation by informing her counsel that the issue of payment for layover time was investigated by the Department of Labor, and the conclusion of the investigation was that layover time was not compensable. This provided a possible affirmative defense that Defendant may raise, further complicating the factual issues.

7. In addition to Plaintiff's claim for overtime compensation, Plaintiff's Complaint also contained a count for failure to pay minimum wage, as well as a claim for retaliatory discharge. Plaintiff alleges that she was terminated for her participation in the investigation opened by the Department of Labor regarding the Defendant's pay practices. The Defendant alleges that Plaintiff voluntarily resigned from her employment. As this claim may present a dispute of fact that would require additional discovery and depositions, it could serve to make the litigation more complex and expensive.

8. The complexity, expense, and length of future litigation also militate in favor of this settlement. Plaintiff and Defendant continue to disagree over the merits of Plaintiff's claims. If the parties continue to litigate this matter, they would be forced to engage in additional motion practice, and possibly a trial in order to prove their claims and defenses. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

9. The parties, who are represented by counsel experienced in employment litigation, recognize the benefit of a settlement rather than protracted litigation.

10. The Settlement Agreement contains a payment of $500.00 to the Plaintiff to compensate her for alleged back wages, as well as an additional $500.00 that has been allocated to compensate her for any alleged liquidated damages. Based upon Plaintiff's hourly rate on her final day of employment, the total amount of back wages would serve to compensate her for a little more than thirty-two (32) additional hours of work at her regular hourly rate. The Settlement Agreement also contains a separate payment to Plaintiff in the amount of $4,000 to resolve her FLSA retaliation claim. In total, Plaintiff will receive a total of $5,000.

11. In addition to the payments to Plaintiff outlined above, the Defendants will also pay $5,000.00 to Plaintiff's counsel to compensate for attorneys' fees and costs. The undersigned counsel aver that the amount of attorneys' fees was negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiff. The amount of attorneys' fees set forth in the Settlement Agreement will fully satisfy Plaintiff's attorneys' fees obligations.

12.     The Settlement Agreement was negotiated by experienced counsel at arm's length over the course of several months and after engaging in discovery and conducting depositions.  The parties agree that it fairly and adequately resolves the claims in this matter.  The parties further agree that there was no undue influence, overreaching, collusion or intimidation in connection with the settlement.

## MEMORANDUM OF LAW

Pursuant to the law of this Circuit, judicial review and approval of this tentative settlement provides final and binding effect to an agreement to settle a compromise of a claim under the FLSA. *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F. 2d 1350 (11th Cir. 1982). As the Eleventh Circuit held in *Lynn Food Stores*,

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . The only other route for compromise of FLSA claims is provided in the context suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. *Id.* at 1352-53.

Before approving an FLSA settlement, the court must ensure that it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55.   If the settlement reflects a reasonable compromise over issues that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In determining whether the parties' Agreement is fair and reasonable, the Court should consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of

5

plaintiff's success on the merits; (5) the range of possible discovery; and (6) the opinions of counsel. See *Leverso v. South Trust Bank of Ala., Nat. Assoc.,* 18 F. 3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.,* No. 6:05-cv-592-0rl-22JGG, 2007 U.S. Dist. LEXIS 10287, at *2-3 (M.D. Fla. Jan. 8, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton,* 2007 U.S. Dist. LEXIS at *2-3; *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).

Here, the parties jointly submit there has been sufficient investigation and exchange of information to allow counsel for Plaintiff and Defendants to evaluate the parties' claims and defenses and make recommendations to each party in agreeing upon the resolution of Plaintiff's claims as set forth in their Agreement. After exchanging information and records from Plaintiff's employment and engaging in settlement negotiations which lasted over the course of numerous months, and in order to avoid the uncertainties of and costs of dispositive motions and trial, a compromise has been agreed upon with Plaintiff receiving a recovery acceptable to her in light of the Defendant's claim that her layover time was not compensable and that she voluntarily resigned from her position. The Plaintiff has been advised that if she proceeds in this matter, she may prove all of the damages to which she claims entitlement, and also receive an equal amount in liquidated damages, or a jury may choose to credit the employer's position, and she may receive a lesser, or no, recovery. In light of this uncertainty, as well as the possibility of protracted litigation, Plaintiff has agreed that the sum she is receiving in this settlement constitutes a reasonable an informed compromise of her claims.

Accordingly, the parties stipulate that this Agreement is fair and reasonable, particularly where, as here, attorneys' fees and costs are not a percentage of

6

Plaintiff's recovery in this case, such that there is no correlation between the amount of monetary consideration being paid to Plaintiff and the amount of attorneys' fees and costs being paid by Defendant on Plaintiff's behalf. *See* 29 U.S.C. §216(b); *Kreager v. Solomon & Flanagan,* P.A., 775 F. 2d 1541, 1542 (11th Cir. 1985). Rather, Plaintiff's attorneys' fees and costs were claimed by Plaintiff and her counsel separate and apart from the amounts sought by Plaintiff for her underlying claims and were negotiated independently. *See Bonetti v. Embarq Mgmt.* Co., No. 6:07-cv-1335-Orl-31GKJ, 2009 U.S. Dist. LEXIS 68075 at *11-12 (M.D. Fla. Aug. 4, 2009)

The compromise agreed upon by the parties resolves all of Plaintiff's claims for attorneys' fees and Plaintiff has no responsibility to her counsel for any out of pocket sums. Importantly, throughout the entirety of the litigation in this case, Plaintiff was represented by competent counsel with experience in labor and employment law and the Defendant was also represented by experienced counsel. The parties further advise the Court that their settlement herein includes every term and condition of the parties' settlement.

WHEREFORE, the parties jointly request that the Court approve the Settlement Agreement and Release.

Respectfully submitted,

| Counsel for Plaintiff | Counsel for Defendant |
|---|---|
| /s/ Zandro E. Palma | /s/ Amy L. Garrard |
| Zandro E. Palma | Amy L. Garrard, Esq. |
| Florida Bar No. 0024031 | Florida Bar No. 908711 |
| Email:zep@thepalmalawgroup.com | E-Mail: agarrard@agemploymentlaw.com |
| ZANDRO E. PALMA, P.A. | AG Employment Law, PLLC |
| 9100 S. Dadeland Blvd., Suite 1500 | 1000 Tamiami Trail N., Suite 301 |
| Miami, Florida  33156 | Naples, Florida  34102 |
| Telephone: (305) 446-1500 | Telephone: (239) 241-7730 |
| Facsimile: (305) 446-1502 | Facsimile: (239) 331-4386 |
| | |
| Desiree Olker | Edward Zengel & Son Express, Inc |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via e-mail utilizing the Court's CM/ECF system to: Zandro E. Palma, Zandro E. Palma, P.A., 9100 S. Dadeland Blvd., Suite 1500, Miami, Florida  33156 at the e-mail address: zep@thepalmalawgroup.com on this 28th day of June, 2021.

s/ Amy L. Garrard